UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JACQUELINE T. HOOVER, | ) |
| Plaintiff, | ) |
| v. | ) 4:08-cv-20-AS-APR |
| MICHAEL ASTRUE, | ) |
| COMM'R OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

Plaintiff, Jacqueline Hoover ("Hoover"), seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Title II of the Social Security Act. Acting for the Commissioner of Social Security, an Administrative Law Judge ("ALJ") denied her applications, finding that Hoover did not have a severe impairment. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

I. BACKGROUND

Hoover was born in 1980, making her around 25 years old when her application for disability insurance benefits was denied in 2005. She has been on insulin since the age of 2 and claims disability based on, among other things, her diabetes, leg swelling, and liver problems.

Hoover filed applications for disability insurance benefits and supplemental security income on January 7, 2005 (with a protective filing date of December 6, 2004), alleging disability as of May 5, 2004. Her claims were denied initially and on reconsideration.

The ALJ held two hearings, one on February 20, 2007, and another on August 16, 2007, at which Hoover, Dr. Ashok Jilhewar, Dr. Peter Gutierrez, and 2 vocational experts testified. On September 11, 2007, the ALJ determined that Hoover was neither disabled nor entitled to DIB or SSI. The Appeals Council denied Plaintiff's request for review on January 17, 2008, and consequently, the ALJ's decision is treated as the final decision of the Commissioner. Getch v. Astrue, 539 F.3d 473, 480 (7th Cir. 2008). Hoover filed a timely petition for judicial review in the Northern District of Indiana, which this Court now considers.

**Medical Evidence**

In August, 2004, Hoover saw Dr. Jaffer complaining of back and hip pain. Though an insulin-dependant diabatic, Hoover admitted that she had not checked her blood sugar for "a long time" and had no insulin. Hoover was diagnosed with a urinary tract infection and was referred to an endocrinologist for her diabetes. Despite this advice, Hoover did not see an endocrinologist for her diabetes until October. Hoover saw Dr. Jaffer several times in August and September, and the Dr. noted a host of issues, including hypothyroidism, hyperlipidemia, and hematuria. Additionally, metabolic testing in September and October showed elevated levels of thyroid hormone.

In October, 2004, Hoover saw an endocrinologist, Dr. Adlard, with complaints of variable blood sugar levels and some leg swelling at the end of the day. He indicated that she had done "extremely well as far as complications" from her diabetes, and that he wanted to put her back on an insulin pump.

In November, 2004, a CT scan of Hoover's liver showed that, though enlarged, there was no change in liver size since her last scan in May, 2003. That same month, Hoover had a Leep conization of the cervix.

In January 2005, tests showed that Hoover's thyroid hormone levels were high and her condition was "uncontrolled." That same month, Hoover saw Dr. Lopatniuk, complaining of cold symptoms and tingling in her left calf. Apart from an enlarged liver, her clinical exam was normal.

In June, 2005, Hoover saw Dr. Siddiqui for a consultative examination in connection with her DIB and SSI application. She reported intermittent tingling and burning in her hands and feet, and said she suffered from edema with prolonged standing and could not stand for more than twenty minutes. Additionally, Hoover claimed she had difficulty walking more than three blocks at a time or lifting more than five pounds. Dr. Siddiqui found pitting edema from her knees to her feet, but detected a normal gait and noted that she was able to get on and off the examination table without difficulty. He also found full strength and a normal sensory exam, though he noted that Hoover had decreased range of motion in the lumbosacral spine.

That same day, Hoover saw Dr. Lopatniuk for swelling and pain in her legs, and was subsequently hospitalized for uncontrolled diabetes. Examination revealed that she had lower extremities with pitted edema and an enlarged liver. The next day, Dr. Adlard examined Hoover and found stocking/glove sensory neuropathy.

In July, 2005, state agency physician Dr. Whitley (whose opinions were affirmed by state agency physician Dr. Dobson) found that Hoover could: (a) lift fifty pounds occasionally and twenty-five pounds frequently; (b) stand/walk for about six hours; and (c) sit for about six hours.

Later that month, Hoover saw Dr. Lopatniuk and reported that her blood sugars were improved and that she had not experienced leg swelling as severe as in June, but that she had intermittent arm and leg numbness and cramping in her legs. Dr. Lopatniuk diagnosed her with diabetic neuropathy in her arms and legs, and referred her for testing.

3

Additionally, in July, 2005, Hoover had a liver biopsy in July that did not reveal any cause for its enlarged condition

In August, 2005, Hoover returned to Dr. Lopatniuk twice. The first time, Dr. Lopatniuk noted that Hoover's liver biopsy looked "almost normal now," but that her depression was not under control. At the second visit, Dr. Lopatniuk noted Hoover's enlarged liver.

In September, 2005, Hoover again saw Dr. Lopatniuk, who noted that her thyroid levels were normal in September but her liver was still enlarged. Dr. Lopatniuk referred Hoover to a gastroenterologist, Dr. Kniaz, who, later that month, found slight swelling in Hoover's lower legs and recommended a better diet for her liver issues.

In November, 2005, Dr. Lopatniuk indicated that Plaintiff's leg edema was "much improved," though her diabetes were not under control. Dr. Lopatniuk opined that Hoover, "safely may perform jobs which include sitting, hearing or speaking," but that she should not travel, or stand or walk for over 1 to 2 hours. The same month, a state agency psychologist found that Hoover did not have a severe mental impairment.

Hoover saw Dr. Lopatniuk several times from January through July, 2006. In January, she had a sinus infection. That same month, Hoover's thyroid levels were, again, within a normal range. In March, Hoover's liver was slightly enlarged, and she had acute gastritis. In May, Hoover was diagnosed with irritable bowel syndrom. Dr. Lopatniuk also noted that Hoover's depression was severe and her hypothyroidism and diabetes continued. In June, Hoover's thyroid hormone levels were high and Dr. Lopatniuk recommended that Hoover return to her endocrinologist, Dr. Adlard.

In July, 2006, Hoover complained of leg numbness and pain. Dr. Lopatniuk noted that Hoover seemed to be non-compliant with her insulin, and strongly urged her to follow up with her

endocrinologist. A few days Hoover returned for the followup on her diabetic neuropathy and also to fill out disability forms. Hoover reported that she was not able to stand for longer than 30 minutes and had some limitations with weight lifting.

Finally, in August, 2006, Dr. Lopatniuk indicated that Plaintiff had uncontrolled diabetes, pain in her liver, and multiple complications including neuropathy, NASH syndrom, and uncontrolled hypothyroidism.

**Testimony**

Hoover testified that she suffered from swelling in her feet and legs, which aggravated the neuropathy in her legs, causing pain and a burning sensation. She stated that she had neuropathy in her hands which made them numb and affected her ability to handle objects. She said that she was a diabetic; she took insulin and that she had liver problems, insomnia, and migraines - which caused nausea, sensitivity to light and noise, and vomiting. Hoover testified that she took herself off her insulin pump because she was going into comas (Tr. 387).

Hoover further testified that she could carry a gallon of milk and two light bags for a short distance, though she did not think she could lift a gallon of milk repeatedly. She felt that she would need unscheduled breaks during the workday and a sit/stand at will option, and that she could not work more than four hours a day, two or three days a week.

Dr. Ashok Jilhewar testified that he reviewed all the medical evidence in the record and that Hoover's impairments neither met nor equaled any listing, nor did they have any effect on Hoover's ability to perform basic work-related activities. He stated that he found only one instance of medical evidence of neuropathy, no medical evidence that it affected her ability to walk, and no clinical explanation for Plaintiff's complaints of fatigue (Tr. 392). Dr. Ashok Jilhewar also testified that

5

Hoover's enlarged liver had no effect on her ability to perform work-related functions, and there was no documentation that her edema caused any functional interference.

**The ALJ's findings**

Because her impairments did not significantly limit her ability to perform work-related functions, the ALJ found that Hoover **did not have a severe impairment** or combination of impairments. Thus, the ALJ found that Hoover's claim failed under step two of the five-step sequential evaluation outlined in 20 CFR §404.1520.

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is a limited one. The Commissioner's findings of fact are conclusive so long as they are supported by "substantial evidence." 42 U.S.C. §405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 399-400 (1971)). In making a substantial evidence determination, this Court will review the record as a whole, but will not re-weigh the evidence or substitute its own judgment for that of the Commissioner. Overman v. Astrue, 546 F.3d 456, 462 (7th Cir. 2008).

"Although this standard is generous, it is not entirely uncritical." Id. at 462 (quoting Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002)). This Court must ensure that the ALJ has built "an accurate and logical bridge between the evidence and the result." Getch, 539 F.3d at 481-82. However, if reasonable minds could differ on whether a claimant is disabled, the court must affirm the Commissioner's decision denying benefits. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008).

III. ANALYSIS

The regulations supporting the Social Security Act create a five-step inquiry in determining whether a claimant is disabled, under which the ALJ must consider the applicant's claim in the following sequence:

> (1) whether the claimant is currently employed;
> (2) whether she has a severe impairment;
> (3) whether her impairment meets or equals one listed by the Secretary;
> (4) whether the claimant can perform her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001) (citing 20 C.F.R. § 404.1520).

Here, the ALJ found that Hoover did not have a severe impairment at step two of the five-step inquiry.

A.   Severity of Claimant's Diabetes

Hoover first argues that the ALJ improperly relied upon the opinion of the medical expert, whose opinion, she argues, is not supported by substantial evidence. (Docket No. 41 at 2). Specifically, the Medical Expert stated that Hoover's diabetes would have to be out of control for six months to have any clinical effect, but then went on to opine that Hoover had only slight clinical limitations. (Tr. 20). Hoover argues that because the record shows that her diabetes were, in fact, uncontrolled for more than six months at a time, the medical expert's testimony is contradictory and the ALJ's reliance on it is, therefore, improper.[1]

---

1   After requesting and receiving four deadline extensions to file Hoover's reply brief, Hoover's counsel wrote, "The medical expert testified that It requires to be uncontrolled at least for six months to ahve (sic) a effect on some clinical symptoms." (Docket No. 41 at 2). Although

Hoover's argument is unavailing. The medical expert testified that Hoover's diabetes would have to be "uncontrolled for at least six months to have [an] effect on some clinical symptoms." (Tr. 396). The medical expert did not, however, opine that diabetes that are uncontrolled for longer than six months would automatically cause a "severe impairment," as required by the regulations supporting the Social Security Act. See 20 C.F.R. § 404.1520(c) (defining a "severe impairment" as one which "significantly limits [one's] physical or mental ability to do basic work activities."). To the contrary, after examining the relevant medical documents, the medical expert opined that, notwithstanding Hoover's uncontrolled diabetes, her impairments did not significantly limit her ability to perform work.

Thus, while this Court recognizes the A1c results referred to in Hoover's brief (Docket No. 26 at 11-12), a review of the record reveals that the medical expert's testimony is not contradictory, and is supported by substantial evidence. Therefore, because the ALJ built an "accurate and logical bridge between the evidence and the result," this Court will not disturb his decision. See Getch, 539 F.3d at 481-82.

B.     Weight given to the Treating Physician's Opinion

Hoover argues that the ALJ did not give a reason for disregarding the testimony of Hoover's treating physician, Dr. Lopatnuik. Id. at 3. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight only where it is "(1) supported by medical findings; and (2) consistent with substantial evidence in the record." Elder, 529 F.3d at 415.

---

counsel may have a point, it is difficult for this Court to discern such language. Notably, Plaintiff's counsel was subsequently able to present Hoover's argument on this issue at the hearing, which the Court now considers.

See also 20 C.F.R. § 404.1527(d)(2).

Should a treating physician's opinion not be given controlling weight under 20 C.F.R. § 404.1527(d)(2), the regulations detail several factors the ALJ should consider in determining how much weight to give the opinion, including the following: (a) the length of treatment and frequency of examination; (b) the nature and extent of the treatment relationship; (c) the extent to which the treating physician presents relevant evidence to support their opinion; (d) the consistency of the opinion; and (e) whether the treating physician is a specialist. 20 C.F.R. § 404.1527(d)(2)-(6).

If, after considering these factors, the ALJ decides to discount the treating physician's opinion, the court "must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his [or her] reasons." Elder, 529 F.3d at 415. This is a standard that the Seventh Circuit Court of Appeals has called both "very deferential" and "lax." Id. at 415; Berger v. Astrue, 516 F.3d 539, 545 (7th Cir. 2008).

Here, with regard to Hoover's treating physician, the ALJ stated:

> Dr. Lopatnuik's determination that the claimant cannot lift, carry, handle objects, or stand/walk more than an hour or two was based almost entirely on the claimant's subjective account of symptoms and restrictions, as opposed to medically acceptable clinical and/or laboratory diagnostic techniques. As a result, the assessment is given very little weight.

(Tr. 21). Thus the reason the ALJ did not give Dr. Lopatnuik's opinion controlling weight and the reason the ALJ discounted her opinion alltogether are one in the same: Dr. Lopatnuik's opinion about Hoover's restrictions were not based on relevant medical evidence. (Tr. 197). Because the ALJ minimally articulated his reasons for discounting Dr. Lopatnuik's opinion, this Court must let the ALJ's decision on the matter stand.

## IV. CONCLUSION

The purpose of this Court's limited review of the ALJ's decision is to ensure that it is supported by substantial evidence. Since the ALJ's decision was supported by substantial evidence, the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**.

**DATED: June 19, 2009**

                                            /s/ ALLEN SHARP
                                       **ALLEN SHARP, JUDGE**
                                       **UNITED STATES DISTRICT COURT**